THE STATE, EX REL. CLEVELAND WRECKING COMPANY, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as State, ex rel. Cleveland Wrecking Co., *v.* Indus. Comm. (1988),
35 Ohio St. 3d 248.]

(No. 86-49—Decided March 16, 1988.)

is said to have occurred on June 11, 1980 before 2:12 p.m.

This proposition is without basis. Fractions of a day are not generally considered in the legal computation of time, and the day on which an act is done or an event occurs must be wholly included or excluded. *Arrowsmith* v. *Hamering* (1883), 39 Ohio St. 573; *Greulich* v. *Monnin* (1943), 142 Ohio St. 113, 26 O.O. 314, 50 N.E. 2d 310. To hold otherwise would create a system whereby an accurate record of the exact hour, minute, and second of an occurrence would be necessary to validate claims. *State, ex rel. Jones*, v. *Bd. of Deputy State Supervisors* (1915), 93 Ohio St. 14, 112 N.E. 136; *Greulich* v. *Monnin, supra.*

Relator's remaining propositions of law relate to the commission's finding that relator violated Ohio Adm. Code 4121:1-3-19(F), which provides:

"(F)  Scaffolding and walkways.

"(1)  Scaffolding.

"In demolishing masonry walls with hand labor, scaffolding shall be provided unless an interior floor is located no more than twelve feet below the working level. All scaffolds used in demolition work shall be substantially supported and shall conform to the requirements of rule 4121:1-3-10 of the Administrative Code.

"(2)  Walkways.

"Walkways or ladders shall be provided to enable employees to safely reach or leave any scaffold or wall."

Relator's first two arguments are based on the first sentence of division (F)(1) of the rule. Essentially, relator proposes that the specific safety requirement of division (F)(2), that an employer provide a walkway or ladder to a scaffold, relates only to that scaffolding that is required under the conditions set forth in the first sentence in division (F)(1). As the claimant was

*Cohen, Todd, Kite & Stanford* and *Edward A. Hogan,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, *Gerald H. Waterman* and *Helen M. Ninos,* for respondents Industrial Commission and Administrator.

*Per Curiam.* Relator first contends that the Industrial Commission abused its discretion in accepting the claimant's VSSR application as it was filed more than two years after the alleged time of the accident. Relator points out that the VSSR application was filed on June 11, 1982, at 2:12 p.m. The accident giving rise to this action

neither demolishing masonry walls nor proven to be more than twelve feet above the floor, relator contends that it did not need to supply a ladder or walkway.

Relator's proposed construction of this rule ignores the second sentence in division (F)(1), which requires that *all* scaffolding used in demolition be substantially supported and conform to the requirements of Ohio Adm. Code 4121:1-3-10. Clearly, this language addresses all scaffolding used in demolition, not just the scaffolding required under the conditions set forth in the first sentence of division (F)(1). The specific safety requirement of division (F)(2) similarly employs inclusive language to address "any scaffold or wall." We find that this language does not support relator's narrow construction.

Relator also argues that the safety requirements set forth in Ohio Adm. Code Chapter 4121:1-3 are not applicable to this case as they concern only construction or demolition. Relator states that the accident took place while it was in the process of gutting a building. The act of "gutting" is said not to constitute demolition, since the outer walls of the structure remain intact.

Ohio Adm. Code 4121:1-3-19(B)(2) defines the term "demolition" as "to dismantle, raze, destroy, or wreck any fixed building or structure." There is nothing in this definition that requires that the structure's outer walls be torn down.

Relator next objects to the commission's classification of the boom of the crane as a scaffold. Ohio Adm. Code 4121:1-3-10(B)(30) defines a "scaffold" as "any temporary elevated platform and its supporting structure used for supporting employees, materials, or equipment." The term "platform" is defined in division (B)(27) of this rule as "the temporary flat working surface used to support employees, material, and equipment." Relator argues that the boom of a crane may not be considered as a scaffold under these definitions and supports this assertion with evidence relating to the normal use of a crane in construction and demolition.

Relator's argument may well be probative of the normal function of a crane in construction and demolition; however, relator's use of the crane in the case at bar was in no sense a normal use. According to the claimant's response to the commission's interrogatory, the claimant was "told to climb up on the crane," prior to performing his assigned task. The employer's decision to use the crane in a manner inconsistent with its normal use renders any evidence relating to its normal use of little value. We find that the employer's use of the crane here satisfies the definition of a "scaffold" in Ohio Adm. Code 4121:1-3-10(B). The crane's boom served as a temporary platform, or a flat working surface, to support the claimant while he was cutting the pipe.

Next, relator challenges the commission's finding that the lack of a ladder or walkway as required under Ohio Adm. Code 4121:1-3-19(F)(2) was the cause of the accident. Essentially, relator contends that it was the movement of the boom while claimant was descending the crane's arm which caused the accident, not the lack of a ladder or walkway to and from the boom.

The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the Industrial Commission, subject only to the "abuse of discretion" test. *State, ex rel. A-F Industries,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 136, 140, 26 OBR

117, 120, 497 N.E. 2d 90, 93-94; *State, ex rel. Ish,* v. *Indus. Comm.* (1985), 19 Ohio St. 3d 28, 31, 19 OBR 24, 26, 482 N.E. 2d 941, 944. A review of the facts in this case demonstrates that the commission had "some evidence" before it to support its conclusion that the lack of a ladder or walkway caused the claimant's accident. The claimant sustained his injury as a result of his attempt to escape the ceiling fire. Had the employer provided a safe means of exit as required by the rule, the claimant would not have been compelled to attempt to walk down the boom. Thus, we find no abuse of discretion by the commission here.

Relator also argues that the application of the specific safety requirement in Ohio Adm. Code 4121:1-3-19 (F)(2) to the situation at bar would require the employer to prop a ladder or walkway against the end of the boom, which is said to be absurd, unsafe, and unnecessary. Relator cites *State, ex rel. Harris,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 152, 12 OBR 223, 465 N.E. 2d 1286, which states that "[t]he commission has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail." *Id.* at 153, 12 OBR at 224, 465 N.E. 2d at 1288.

Relator fails to consider that the claimant was placed in a precarious position by relator's decision to use the boom of a crane as a scaffold on which to support the claimant while he was cutting ceiling pipe. When relator elected to use this equipment in such a manner, it was required, pursuant to Ohio Adm. Code 4121:1-3-19(F)(2), to afford the claimant either a ladder or a walkway to and from the makeshift scaffold. While the application of this specific safety requirement to this situation may appear odd, this is a reflection of relator's unorthodox use of the crane. Thus, relator is not absolved from satisfying all the safety requirements that may apply to the unorthodox use.

Relator next argues that the commission's November 18, 1985 order should be viewed as a nullity on the grounds that it adopts the same conclusions as those in the commission's August 31, 1984 order, which was subsequently vacated as being "based on what *might* be construed as an obvious mistake of fact." (Emphasis *sic.*)

While the commission's actions are apparently contradictory, this court has held that the commission retains continuing jurisdiction over each case to make such modifications, changes, findings and awards as, in its opinion, are justified. *Kittle* v. *Keller* (1967), 9 Ohio St. 2d 177, 38 O.O. 2d 414, 224 N.E. 2d 751. Hence, the fact that the commission on rehearing reinstated its prior order and modified the reasoning of the prior hearing officer does not affect the validity of its final order.

Relator also raises a number of challenges to some of the commission's factual findings in this case. First, relator contests the commission's conclusion that the claimant was sitting on the end of the boom when the fire broke out on the ceiling. Relator directs this court's attention to the claimant's original application for medical benefits in which the claimant represented that he was "cutting on rafters" and "made his way back to [the] boom" after the ceiling caught fire.

This factual challenge is not persuasive. The commission's assessment that the crane was used as a scaffold to support the claimant while he was cutting ceiling pipe is substantiated by the claimant's VSSR application, answers of the claimant and the crane operator to the commission's interrogatories

and by the commission's investigative report. Contradictory evidence in the record does not necessarily invalidate the commission's factual findings in this regard. This court may not substitute its own opinion on factual matters for that of the Industrial Commission. *State, ex rel. Bevis,* v. *Coffinberry* (1949), 151 Ohio St. 293, 296, 39 O.O. 135, 136, 85 N.E. 2d 519, 521; *State, ex rel. Marshall,* v. *Keller* (1968), 15 Ohio St. 2d 203, 205, 44 O.O. 2d 184, 185, 239 N.E. 2d 85, 87; *State, ex rel. Ianiro,* v. *Indus. Comm.* (1979), 60 Ohio St. 2d 152, 153, 14 O.O. 3d 389, 390, 397 N.E. 2d 1355, 1356.

Finally, relator argues that the commission's final order erroneously attributes Glen Prater, the crane operator, as being the source for its conclusion that "the crane boom was used in lieu of regular scaffolding because the scaffolding which the employer ordered for the job never arrived." A review of the record reveals that this information was derived from an answer to an interrogatory given by *the claimant.*

Although relator's assertion as to the source of this statement is valid, this fact does not, in and of itself, manifest that the commission's final order was an abuse of discretion. The commission's finding was not based on this statement. Rather, the commission's ultimate decision was based on the perception that the employer's use of the crane qualified it as a "scaffold" as defined in the Ohio Administrative Code and that the employer's failure to provide a ladder or walkway to and from the scaffold was the proximate cause of the claimant's injuries.

For the reasons set forth in this opinion, we deny the requested writ of mandamus.

*Writ denied.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.