[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 275.]

THE STATE EX REL. DIBBLE, APPELLANT, *v.* PRESRITE CORPORATION ET AL.,
APPELLEES.

[Cite as *State ex rel. Dibble v. Presrite Corp*., 1999-Ohio-263.]

*Workers' compensation—Alleged violation of specific safety requirement dealing
with insulated personal protective gear—VSSR application denied by
Industrial Commission—Cause returned to commission for further
consideration and amended order, when.*

(No. 96-2166—Submitted January 26, 1999—Decided April 7, 1999.)

APPEAL from the Court of Appeals for Franklin County, No. 95APD10-1273.

———————————

{¶ 1} Appellee Presrite Corporation is a metal fabricator. The plant's
induction heating units anchor the manufacturing process, heating the steel out of
which metal forgings are made. An induction heating failure stops that assembly
process.

{¶ 2} On August 7, 1990, an induction heater kept shutting down.
Appellant-claimant, Gary G. Dibble, Sr., Presrite's maintenance electrician,
suspected that a 2,000-kilowatt transformer on the mezzanine level of the plant was
overheating. Claimant went to investigate, with the intention of checking the
transformer cooling hoses for temperature and flow.

{¶ 3} The transformer converted an incoming potential of 4,160 volts into
a lower voltage suitable for plant use. The transformer was housed in a walk-in
cabinet with east and west doors. The east double doors accessed the transformer's
high-voltage side and were protected by a mechanical interlock. The interlock
acted as a power lockout device and roughly consisted of a knife switch, a knife
switch lock, a door dead-bolt lock, and a single "kirk" key that accessed both locks.
To enter the cabinet, the adjacent knife switch was opened (pulled down), which

shut down power to the transformer. Then the knife switch lock — located on the switch's handle — was turned to the locked position. Only then could the kirk key be removed from the handle and inserted into the door dead bolt, thus opening the doors. There was also a remote main power location from which the power could be disconnected, but testimony indicates that even when using the main disconnect, the knife switch still had to be locked down in order to remove the kirk key that was necessary for the remaining dead bolt.

{¶ 4} Despite the interlock, claimant, on the date of injury, was able to enter the cabinet while the power was still on. Claimant knew that the transformer was energized. He did not know that the cooling hoses were attached to the transformer with copper connectors, and, as a result, claimant was severely injured when his hand brushed against one of them.

{¶ 5} Sometime later, in addition to the kirk key still in the knife switch, a second kirk key was discovered in the door dead bolt. This meant that the cabinet could be opened without cutting power at the knife switch. The second key was immediately destroyed by maintenance supervisor Jerry Westfall.

{¶ 6} After a workers' compensation claim was allowed by appellee Industrial Commission of Ohio, claimant sought additional compensation, alleging that Presrite had violated certain specific safety requirements ("VSSR") dealing with insulated personal protective gear. At hearing, claimant testified that, on the date of injury, the cabinet doors were propped open with the unit running when he arrived at the transformer site. Claimant said that he had seen the doors propped open with the unit energized several times in the four to six weeks preceding the accident, which corresponded to a period of frequent transformer overheating. Claimant did not know who was propping the doors open, but stated that Presrite knew of—and condoned—the practice. According to claimant, Westfall told him that the open doors provided ventilation that helped cool the unit.

**{¶ 7}** Claimant stated that he could not disconnect the power at the knife switch before entering because it was broken. According to claimant, a broken spring mechanism prevented the knife switch from opening as quickly as it should, creating the risk of an arc-over explosion. Claimant reported that the knife switch had been broken for two to three months prior to the accident and that his repeated complaints to Presrite had been ignored. Claimant stated that had the knife switch been working properly, he definitely would have used it. Claimant testified that the coolant pump was on a separate circuit from that of the transformer. He could, therefore, check the hoses with the transformer off.

**{¶ 8}** When questioned as to why he did not instead go to the main power disconnect, claimant stated that he could not accurately gauge hose flow and particularly temperature unless he was able to access the hoses immediately after the unit was deenergized. This eliminated going to the main switch room to deenergize the unit, which was an eight-to-ten-minute process.

**{¶ 9}** Claimant denied knowledge of a second key. He also stated that he did not notice whether a second kirk key was in the door because the door was already open. He did add, however, that a second kirk key was not the only way to circumvent the interlock. He stated that once a single key had been properly used to open the doors, the doors could be propped open, the key reinserted into the knife switch, and the power reactivated.

**{¶ 10}** Claimant finally testified that he had seen Presrite safety coordinator, Walle (or Wally) Woodworth, among others, work around energized transformers.

**{¶ 11}** Presrite presented several employees to rebut claimant's testimony. Witnesses denied having ever seen the east side doors open with the power on. Westfall also specifically denied the remarks attributed to him. Witnesses denied that Presrite required or allowed anyone to work on energized equipment. Presrite

employees denied having seen anyone work on a live high-voltage transformer, and Woodworth specifically denied doing so.

{¶ 12} Certain employees denied that the knife switch was broken. However, on cross-examination, Woodworth admitted that while the knife switch itself was functioning properly, the spring mechanism that controlled it had had problems before the accident. Follow-up questioning and testimony, however, never elicited whether the problem was indeed recurrent or whether it had been resolved before the accident.

{¶ 13} Everyone denied awareness of a second kirk key prior to its discovery in the dead-bolt lock after claimant's accident. All witnesses additionally denied having ever seen or heard of the claimant's having a second key.

{¶ 14} A commission hearing officer concluded that a second kirk key was the only way to override the interlock — rejecting claimant's alternate theory for lack of corroborative evidence. The hearing officer also found that Presrite did not know of or authorize the second kirk key. In the same vein, he found insufficient evidence to attribute the key to the claimant. Based on these findings, the hearing officer reasoned:

"[A]s designed and installed[,] it was mechanically impossible to gain access to the transformer while it was energized. It is therefore found that claimant was not required to work in proximity to energized lines * * * [and Ohio Adm.Code] 4121:1-5-17(I)(4) is held not to be applicable."

{¶ 15} Similar logic was used to determine that the transformer's power source was isolated so as to render Ohio Adm.Code 4121:1-5-23(A) inapplicable.

{¶ 16} In denying claimant's motion for reconsideration, a staff hearing officer wrote:

"The Hearing Officer's conclusion that the claimant was not required to work in proximity to energized lines is not found to be a mistake of fact.

4

"The claimant testified that he believed the only way to determine the source of the overheating problem was to physically feel the rubber hoses while the transformer was operating which thereby exposed him to energized lines.

"While the claimant apparently believed this was the proper way to correct the overhearing [*sic*] problem, evidence in file demonstrates that the claimant should have first shut off the power to the transformer before he took any further action. Specifically, on page 20 of Walle Woodworth's deposition[,] he stated the line should first be shut down before further investigative active [*sic*] is taken.

"Therefore, the Hearing Officer's finding that the claimant was not required to work near energized lines is supported by evidence in file, and while claimant may have believed otherwise, there is no unequivocal evidence stating that the employer required claimant to leave the power on while investigating the overhearing [*sic*] problem."

{¶ 17} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying his VSSR application. The court of appeals disagreed and denied the writ.

{¶ 18} This cause is now before this court upon an appeal as of right.

_____

*Weiner, Suit & Coury* and *Walter Kaufmann*, for appellant.

*Wegman, Hessler, Vanderburg & O'Toole, Keith A. Vanderburg* and *Christopher A. Holecek*, for appellee Presrite Corporation.

*Betty D. Montgomery*, Attorney General, and *Michael A. Vanderhorst*, Assistant Attorney General, for appellee Industrial Commission.

_____

*Per Curiam.*

{¶ 19} A single issue is presented: Is there "some evidence" to support the commission's conclusion that Presrite had (1) isolated its electrical equipment and (2) did not require claimant to work on energized equipment so as to render

inapplicable specific safety requirements dealing with insulated personal protective equipment? Upon review, we find that one of the factual conclusions on which the commission relied is not supported by "some evidence" and that analysis of another is incomplete. As such, the cause is returned for further consideration and amended order.

{¶ 20} In finding that claimant was not required to work around energized lines, the commission concluded that claimant (1) could have deenergized the transformer, but (2) chose not to because he believed that the hoses could be checked only with the transformer on. No evidence supports the second finding. Claimant never said that he entered the energized transformer cabinet because it was the only way to check the hoses. To the contrary, claimant specifically said that the transformer did not need to be on because the coolant pump was on a separate circuit.

{¶ 21} Claimant testified that the reason he did not cut the transformer's power was because he was unable to contemporaneously do so, due to a broken interlock knife switch. Unfortunately, the commission never addressed this crucial allegation. In examining only the interlock's design and installation, it considered theory but not reality. In addressing how the interlock was supposed to work, the commission ignored how it did work on the date of injury. The commission must address this key point.

{¶ 22} Accordingly, the judgment of the court of appeals is reversed, and the cause is returned to the commission for further consideration and amended order.

*Judgment reversed*
*and cause returned.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____