DECISION AND JUDGMENT ENTRY
Relators Diane K. Lewis and Richard M. Lewis filed this mandamus action seeking to compel the Jackson County Board of Commissioners and the Jackson County Dog Warden to comply with certain provisions of the Ohio Revised Code relating to the dog pound and the warden's duties. In addition, they seek to recover their interest, costs, and reasonable attorney fees.[1]
In order for this court to grant a writ of mandamus, the relators must show that: (1) they have a clear legal right to the relief prayed for; (2) respondents are under a clear legal duty to perform the acts; and (3) relators have no plain and adequate remedy in the ordinary course of law. See State ex rel. Hodges v. Taft (1992), 64 Ohio St.3d 1, 3,591 N.E.2d 1186, 1188, citing State ex rel. Harris v. Rhodes (1978),54 Ohio St.2d 41, 374 N.E.2d 641. See, also, Conley v. CorrectionalReception Ctr. (2001), 141 Ohio App.3d 412, 415, 751 N.E.2d 528, 530.
The respondents argue that the statute of limitations bars the admission of certain evidence. They also contend that the mandamus action is barred by the doctrine of laches. We find that respondents' arguments are novel at best. A statute of limitations serves to bar the filing of an action, not bar the introduction of evidence. See Black's Law Dictionary (6 Ed. 1991) 639. The fact that the board of commissioners is now comprised of different members and the dog warden has changed does not limit the introduction of relevant evidence; that is not the purpose of the statute of limitations. The rules of evidence concerning relevancy are more appropriately cited in that instance.
The doctrine of laches applies when there has been "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Emrick v. MulticonBuilder, Inc. (1991), 57 Ohio St.3d 107, 111, 566 N.E.2d 1189, 1194, quoting Connin v. Bailey (1984), 15 Ohio St.3d 34, 472 N.E.2d 328. It is undeniable that relators have attempted for several years to settle this dispute with the respondents before resorting to litigation. They have asserted their rights, without delay, as have many others in the community. The delay in settling this conflict seems to be from the reluctance of both parties. Respondents cannot now claim they have been adversely prejudiced due to their own unwillingness to act.
However, it appears that many of the relators' requests have already been satisfied during the course of this litigation. Therefore, several of relators' requests are now moot. From the evidence, it appears that the dog warden is making weekly reports to the Jackson County Board of notifying identifiable owners of impounded dogs and posting a notice identifying all other impounded dogs as required by law. It appears that the respondents are also complying with the requirements concerning the collection of fees and costs from owners of impounded dogs. Accordingly, we deem these requests from relators to be moot to the extent that we do not address them below.
In addition, the relators have failed to support several requests with any kind of evidence. Since the relators have the initial burden of proof to show a legal duty is not being performed, we cannot issue an order of mandamus concerning them. The relators have failed to submit any evidence that the following purported legal duties are not being performed: to quarantine, for a period of ten (10) days, dogs that have bitten a person, to keep records for at least three (3) years, to pick up strays and to charge the correct fees for kennel registration licenses. The requests for a writ of mandamus on these matters are, therefore, summarily denied.
Most of relators' complaints arise out of a conflict in the interpretation of the Ohio Revised Code sections pertaining to dog wardens and the duties of the County Commissioners in overseeing the dog warden. Therefore, our focus in reviewing the petition will be on whether the dog warden or the county commissioners have a clear legal duty to perform any of the requested acts. In other words, we must determine whether the statutes vest the dog warden and the commissioners with discretion or alternatively, whether they prescribe mandatory duties.
Relators' petition seeks to enforce the provisions of R.C. 955.12 and 955.16 concerning the holding periods for impounded dogs.[2] Among other things, R.C. 955.12 requires dog wardens to seize and impound dogs found running at large and dogs more than three months old not wearing a current registration tag (with certain exceptions). It also requires the dog warden to notify the owner of a currently registered dog by certified mail that the dog has been impounded and may be sold or destroyed unless it is "redeemed within fourteen days of the notice." The dog warden must notify the owner of an unregistered dog by posting of a notice at the pound describing the dog and where it was seized and stating that the dog may be sold or destroyed unless it is redeemed "within three days." The warden must keep, house and feed unregistered dogs for three days for the purpose of redemption, R.C. 955.16(A); the warden must keep, house and feed registered dogs for fourteen days, R.C. 955.16(A)(2). An owner who has been contacted may request that the dog remain at the pound until he or she can redeem it, but this extension cannot extend more than forty-eight hours past the applicable redemption period. Diseased or injured dogs may be destroyed immediately according to R.C. 955.16(A)(1). R.C. 955.18 states that the owners of seized dogs may redeem them "at any time prior to the expiration of the applicable redemption period as specified in section 955.12 and 955.16" upon payment of certain costs and registration, if the dog is currently unregistered.
The parties are in disagreement as to what constitutes a "day." The common law rule is that a day is an indivisible unit and is not parsed into hours, minutes and seconds. See State ex rel. Cleveland WreckingCo. v. Indus. Comm. (1988), 35 Ohio St.3d 248, 249, 520 N.E.2d 228, 230. Moreover, we apply R.C. 1.14[3] to the computation of the three and fourteen-day periods. R.C. 1.14 is not limited to cases in which an act is compelled within a certain time, but also includes cases in which an act is permitted to be done within a certain time to avoid a loss of legal rights. City of Athens v. White (1971), 28 Ohio St.2d 35,274 N.E.2d 760; State v. Elson (1908), 77 Ohio St. 489, 83 N.E. 904. This reasoning applies to the redemption of dogs. Dogs are personal property, and the inability or failure to redeem them, once impounded, results in the loss or forfeiture of the property. Dogs not redeemed in time may be donated to assist the handicapped or sold to the public, R.C. 955.12(A), sold to teaching or research institutions, R.C. 955.16(B), or destroyed, R.C. 955.16(C). R.C. 955.12, 955.16, and 955.18 clearly provide a remedy to prevent this loss or forfeiture, and we construe this remedy liberally under R.C. 1.11.[4]
Accordingly, we construe sections 955.12 and 955.16 to require the warden to keep, house and feed currently registered dogs for fourteen consecutive days after the date on which the warden sends the required notice by certified mail, unless the dog is redeemed sooner. The warden must keep, house and feed unregistered dogs for three consecutive days after the warden posts the required notice at the pound, unless the dog is redeemed sooner. Under R.C. 1.14, the date that the warden mails or posts the notice is excluded from the fourteen and three-day periods, respectively; the last day for redemption is included. When attempts to give notice by certified mail to the owner of a currently registered dog fail, the warden still must keep, feed and house the dog for fourteen consecutive days, as defined here. Any dog impounded by court order must be kept, housed and fed until further order of the court. In so far as the Jackson County dog warden is destroying or disposing of impounded dogs before these periods of time have elapsed, we issue a writ of mandamus to enforce the statute as we construe it.
The relators also contend that conditions in general at the pound are inhumane. Although there is no case law on what is considered a "suitable place for impounding dogs," the Ohio Attorney General has stated that:
 A suitable place for impounding dogs, for purposes of R.C. 955.15, must, at a minimum, be a place where it is possible to keep impounded dogs for the periods of time required by law, to provide care for the dogs in a manner that does not constitute cruelty to animals * * *, and when necessary, to provide for the humane destruction of dogs. 1995 Ohio Atty.Gen. Ops. No. 95-021.
The Attorney General's opinion is a simple restatement of the statute, with little guidance as to what conditions might make the facility unsuitable or result in "cruelty to animals." Relators have not introduced any evidence of specific standards or minimum conditions that characterize or identify a "suitable place," or introduced specific evidence of general operations that may constitute cruelty to animals, except for conditions surrounding the pound's drop-off capability and allegations of unlawful and inhumane destruction of dogs, which are addressed below. Absent any controlling case law, mandatory guidelines in the statute or some evidence that defines a suitable place, we cannot issue a writ. Mandamus will not issue to compel respondents to follow the law generally. Cullen v. State (1922), 105 Ohio St. 545, 138 N.E. 58. Had we been presented with some evidence of well-recognized minimum standards or specific evidence of cruelty, our decision might be otherwise. However, under the existing record, the commissioners of the county in which the dog pound is located are in a better position to determine what type of facility will fulfill their county's needs.
The relators have renewed their contention that no regular hours are posted at the dog pound, thus precluding the public from being able to pick up or drop off stray dogs. While the relators previously acknowledged that the respondents had complied with this request, they now contend that the practice of posting hours has stopped. The respondents have not introduced any evidence to the contrary. According to R.C. 955.15, the county commissioners "shall provide * * * for the taking of dogs in a humane manner, provide a suitable place for impounding dogs, make proper provision for feeding and caring for the same, and provide humane devices and methods for destroying dogs." Nothing in this statute expressly requires the commissioners or the dog warden to post the pound's operational hours. However, it would seem implicit to post the hours for the public's convenience given owners' rights of redemption under R.C.955.12, 955.16 and 955.18. Those redemption rights may be severely limited if the hours of operation of the pound are limited as respondents have admitted. Accordingly, we issue a writ of mandamus requiring the commissioners to post the pound's operational hours, including those times when someone is normally there, and phone number.
The relators also demand that the county expand the hours that the pound is available to the public. The relators contend that the dog pound should be open on the weekends and holidays and provisions made for dogs that are left during "off-times." The previous warden testified in his deposition that he normally was at the pound from 8:00 a.m. to 9:30 a.m. every weekday and he was "in and out picking up dogs the rest of the day." On Wednesdays, he was at the pound from 4:00 p.m. to 5:00 p.m. and from 9:00 a.m. to 10:00 a.m. on Saturday. Either he or the assistant went to the pound on Sundays briefly to care for the dogs. The warden also stated that he was on call 24 hours a day, that the dog pound had an answering machine, and that the assistant dog warden took his place during vacation time and sick days. Whether these efforts meet the community's needs are factors for the commissioners, and ultimately the voters to consider, not this court. The commissioners can change the operations of the dog pound if they feel the community requires it. We are not in a position to order an action that is neither expressly nor implicitly mandated by the statute. Issuance of a writ of mandamus requires a clear duty on the part of respondents. Therefore, we deny relators' request for an order that requires the commissioners or the warden to expand the hours beyond those testified to by Bruce Richards.
However, relators have offered extensive evidence, which the respondents have not refuted, that county residents are being forced to abandon dogs because no one is present at the pound much of the day. Accordingly, we order the warden to provide a humane drop-off system and to attend to it at least once every 24 hours. The relators also complain about the methods the county uses to dispose of strays. The evidence submitted to the court indicates that a licensed veterinarian euthanizes the dogs at the Jackson County dog pound every Friday. There can be no dispute that this is a proper method to deploy after the dogs have been held for the statutorily mandated amount of time.
Also at issue, however, is the dog warden's use of a gun to destroy some dogs. Relators contend that shooting dogs is routine. R.C.955.16(A)(1) allows the dog warden to use his discretion if "[i]mmediate humane destruction of the dog is necessary because of obvious disease or injury." The question becomes whether the use of a gun is a humane means of destruction. We do not read the statute as requiring the "most humane" means, only a humane one. According to the individual facts and circumstances, immediately destroying a diseased or injured dog with a gun may be humane, in other instances it would not. Because it is impossible to conceive of all the situations faced by the dog warden, we will not attempt to do so. However, we conclude that the routine shooting of dogs as the standard method of destruction in a county dog pound or by a county dog warden is not humane. Therefore, absent some unusual or exigent circumstance, including but not limited to menacing, R.C. 955.28, or severely diseased or injured dogs, R.C. 955.16(A)(1), we issue a writ of mandamus compelling the respondents to use medication/sedation as the routine means of destruction. Under unusual or exigent circumstances, the respondents retain discretion to destroy dogs with firearms. However, a future abuse of that discretion will not be taken lightly by this court.
Relators also seek an order requiring the dog warden to transport dogs in a safe and humane manner. According to relator Diane Lewis, the dogs have been riding "loose" in the bed of an uncovered pickup truck. Respondents do not contest the accuracy of this allegation. Rather, they defend that conduct on the basis of custom, i.e., this is done routinely in rural areas. Allowing dogs to roam about freely in the open bed of a pickup is dangerous to both the dogs and the public. Nothing prevents the dogs from jumping from the bed into oncoming traffic and causing an accident, injuring themselves and/or escaping. R.C. 955.15 requires respondents to "provide nets and other suitable devices" for the taking of dogs in a humane manner. We construe this provision to require safe transit. We therefore issue a writ of mandamus ordering the commissioners to provide the warden with a well-ventilated dog transportation box that has at least two separate compartments, or in the alternative, a truck cap and at least two separate cages or one cage with two separate compartments.
The relators also contend that additional wardens or deputies are necessary. R.C. 955.12 requires the board of county commissioners to appoint a county dog warden. The pertinent part of the statute reads:
 The board of county commissioners shall appoint or employ a county dog warden and deputies in such number, for such periods of time, and at such compensation as the board considers necessary. R.C. 955.12
(Emphasis Added.).
The commissioners duty to appoint a dog warden is clearly mandatory by virtue of the word "shall." However, their responsibility to hire deputies is left to their discretion to determine the number, periods of time and compensation "as the board considers necessary." See Marshallv. Kennedy (Jan. 21, 1988), Belmont App. No. 86-B-3, unreported (stating that R.C. 955.12 "merely requires that the county commissioners hire a dog warden"). The only mandatory duty for the Jackson County Board of Commissioners is to appoint a county dog warden, which they have done. There is nothing in the statute that would require the commissioners to hire additional staff; that decision is purely within the discretion of the board, and they have no clear duty to do so. That part of the petition seeking writ to compel the commissioners to hire additional staff is denied.
In their last request, relators ask for an award of their expenses, including attorney fees incurred in this litigation. Generally, an award of attorney fees is only allowed when there is express statutory authorization. State ex rel. Caspar v. Dayton (1990), 53 Ohio St.3d 16,20, 558 N.E.2d 49, 53-54. An exception arises if the action is defended in bad faith. State ex rel. Durkin v. Ungaro (1988), 39 Ohio St.3d 191,193, 529 N.E.2d 1268, 1270. Since we have sustained many of respondents' contentions, we cannot conclude that the bad faith exception applies. Relators' request for expenses, including attorney fees, is denied. However, we do award the recovery of statutory costs to the relators since they have prevailed on several issues.
The writ of mandamus is granted only as to the request that the dog warden comply with three (3) day and fourteen (14) day holding periods as outlined in R.C. 955.16, that the operational hours of the dog pound be posted for the public, that the commissioners and/or warden provide a humane drop-off system, that the dog warden cease shooting dogs except under exigent circumstances and that the dogs be transported in a humane manner consistent with this opinion. The remainder of relators' petition is denied. In reaching our decision, we are mindful of the fact that counties are limited in the amount of funds that are available to address multiple needs. In the absence of express statutory mandates, the decisions on how to allocate scarce resources among competing demands are best left to local legislative officials, not the judiciary. Perceived abuses in that process can be addressed by the electorate.
WRIT GRANTED IN PART, DENIED IN PART. Statutory costs herein taxed tothe respondents.
Abele, P.J. Evans, J.: Concur in Judgment and Opinion.
 APPENDIX A
In 1998, relators filed their initial complaint and petition against the Jackson County Board of Commissioners, objecting to the actions of the county dog warden and the way in which the county dog pound was being managed. Respondents filed their answer, claiming the duties listed in the statute were discretionary, and since they were not under a legal duty to act, a writ of mandamus was not proper. We ordered the parties to proceed under Loc.App.R. 16 Original Actions and to submit their evidence. Relators then filed a motion to join an additional party respondent, the county dog warden at the time, Delano Newsom, along with an amended complaint. Both parties made unsuccessful attempts at discovery. Accordingly, relators filed a motion to compel discovery as well as a motion for partial summary judgment for failure to respond to discovery requests. Respondents simultaneously filed a motion to dismiss, followed by a motion for a protective order to stay discovery until we ruled on the motion to dismiss, along with a motion to strike the motion compel discovery and motion for partial summary judgment. Relators also filed an amended prayer for relief, listing eighteen (18) separate orders they sought us to impose upon respondents. We granted the motion to join the additional party, but denied all other motions by all parties. Relators filed another amended complaint following the passing of Mr. Newsom, naming Bruce Richards, the current dog warden at the time, as a respondent. We then established a briefing schedule and ordered all evidence and briefs to be submitted to the court. Respondents filed a motion in limine and another motion to dismiss. We denied both motions. In the meantime, Bruce Richards has been replaced as dog warden, but no one has been substituted as a party. Both parties filed briefs in support of their positions. The parties were ordered to mediation, but these efforts failed. The cause is now before us for a determination on the merits.
Relators submitted a variety of evidence in support of their petition, including photographs and two videotapes of dogs at the pound. The evidence shows malnourished dogs and puppies that had been left at the dog pound. The dogs appear to have been left uncared for, sometimes for several days at a time. Both parties introduced their own affidavits, as well as sworn affidavits from other members of the community. The affidavits describe incidents that have occurred and involve the dog warden, such as the shooting of dogs unnecessarily and the euthanization of dogs prior to the expiration of the statutory holding period. There were also affidavits submitted by community members concerned with the operational hours of the dog pound and the lack of care being supplied to the dogs. In addition, relators submitted newspaper articles on the operational problems of the dog pound and the questionable actions of the dog warden. Relators also kept notes on the dog pound, such as when dogs were being dropped off and when the dog warden appeared to be on duty, which they submitted. Respondents filed the weekly reports that had been kept by the dog warden and given to the board of commissioners. Lastly, the parties offered deposition testimony from the dog warden and the relators. The dog warden testified as to his compliance with his job duties. In contrast, the relators testified as to the inadequacies of the dog pound and the warden and the failure of the commissioners to rectify the problem.
 APPENDIX B
§ 955.12 Dog wardens.
The board of county commissioners shall appoint or employ a county dog warden and deputies in such number, for such periods of time, and at such compensation as the board considers necessary to enforce sections 955.01
to 955.27, 955.29 to 955.38, and 955.50 of the Revised Code.
The warden and deputies shall give bond in a sum not less than five hundred dollars and not more than two thousand dollars, as set by the board, conditioned for the faithful performance of their duties. The bond or bonds may, in the discretion of the board, be individual or blanket bonds. The bonds shall be filed with the county auditor of their respective counties. The warden and deputies shall make a record of all dogs owned, kept, and harbored in their respective counties. They shall patrol their respective counties and seize and impound on sight all dogs found running at large and all dogs more than three months of age found not wearing a valid registration tag, except any dog that wears a valid registration tag and is: on the premises of its owner, keeper, or harborer, under the reasonable control of its owner or some other person, hunting with its owner or its handler at a field trial, kept constantly confined in a registered dog kennel, or acquired by, and confined on the premises of, an institution or organization of the type described in section 955.16 of the Revised Code. A dog that wears a valid registration tag may be seized on the premises of its owner, keeper, or harborer and impounded only in the event of a natural disaster. If a dog warden has reason to believe that a dog is being treated inhumanely on the premises of its owner, keeper, or harborer, the warden shall apply to the court of common pleas for the county in which the premises are located for an order to enter the premises, and if necessary, seize the dog. If the court finds probable cause to believe that the dog is being treated inhumanely, it shall issue an order. The warden and deputies shall also investigate all claims for damages to animals, fowl, or poultry reported to them under section 955.29 of the Revised Code and assist claimants to fill out the claim form therefor. They shall make weekly reports, in writing, to the board in their respective counties of all dogs seized, impounded, redeemed, and destroyed and of all claims for damage to animals, fowl, or poultry inflicted by dogs. The wardens and deputies shall have the same police powers as are conferred upon sheriffs and police officers in the performance of their duties as prescribed by sections 955.01 to 955.27, 955.29 to 955.38, and 955.50 of the Revised Code. They shall also have power to summon the assistance of bystanders in performing their duties and may serve writs and other legal processes issued by any court in their respective counties with reference to enforcing such sections. County auditors may deputize the wardens or deputies to issue dog licenses as provided in sections 955.01 and 955.14
of the Revised Code. Whenever any person files an affidavit in a court of competent jurisdiction that there is a dog running at large that is not kept constantly confined either in a registered dog kennel or on the premises of an institution or organization of the type described in section 955.16 of the Revised Code or that a dog is kept or harbored in his jurisdiction without being registered as required by law, the court shall immediately order the warden to seize and impound the animal. Thereupon the warden shall immediately seize and impound the dog complained of. The warden shall give immediate notice by certified mail to the owner, keeper, or harborer of the dog seized and impounded by him, if the owner, keeper, or harborer can be determined from the current year's registration list maintained by the warden and the county auditor of the county where the dog is registered, that the dog has been impounded and that, unless the dog is redeemed within fourteen days of the date of the notice, it may thereafter be sold or destroyed according to law. If the owner, keeper, or harborer cannot be determined from the current year's registration list maintained by the warden and the county auditor of the county where the dog is registered, the officer shall post a notice in the pound or animal shelter both describing the dog and place where seized and advising the unknown owner that, unless the dog is redeemed within three days, it may thereafter be sold or destroyed according to law.
§ 955.16 Disposition of dogs; research; inspection by humane society.
(A) Dogs that have been seized by the county dog warden and impounded shall be kept, housed, and fed for three days for the purpose of redemption, as provided by section 955.18 of the Revised Code, unless any of the following applies:
(1) Immediate humane destruction of the dog is necessary because of obvious disease or injury. If the diseased or injured dog is registered, as determined from the current year's registration list maintained by the warden and the county auditor of the county where the dog is registered, the necessity of destroying the dog shall be certified by a licensed veterinarian or a registered veterinary technician. If the dog is not registered, the decision to destroy it shall be made by the warden.
(2) The dog is currently registered on the registration list maintained by the warden and the auditor of the county where the dog is registered and attempts to notify the owner, keeper, or harborer under section 955.12
of the Revised Code have failed, in which case the dog shall be kept, housed, and fed for fourteen days for the purpose of redemption.
(3) The warden has contacted the owner, keeper, or harborer under section 955.12 of the Revised Code, and the owner, keeper, or harborer has requested that the dog remain in the pound or animal shelter until the owner, harborer, or keeper redeems the dog. The time for such redemption shall be not more than forty-eight hours following the end of the appropriate redemption period.
At any time after such periods of redemption, any dog not redeemed shall be donated to any nonprofit special agency that is engaged in the training of dogs to serve as guide or leader dogs for blind persons, hearing dogs for deaf persons, or support dogs for mobility impaired persons and that requests that the dog be donated to it. Any dog not redeemed that is not requested by such an agency may be sold, except that no dog sold to a person other than a nonprofit teaching or research institution or organization of the type described in division (B) of this section shall be discharged from the pound or animal shelter until the animal has been registered an furnished with a valid registration tag.
(B) Any dog that is not redeemed within the applicable period as specified in this section or section 955.12 of the Revised Code from the time notice is mailed to its owner, keeper, or harborer or is posted at the pound or animal shelter, as required by section 955.12 of the Revised Code, and that is not required to be donated to a nonprofit special agency engaged in the training of guide, leader, hearing, or support dogs may, upon payment to the dog warden or poundkeeper of the sum of three dollars, be sold to any nonprofit Ohio institution or organization that is certified by the Ohio public health council as being engaged in teaching or research concerning the prevention and treatment of diseases of human beings or animals. Any dog that is donated to a nonprofit special agency engaged in the training of guide, leader, hearing, or support dogs, in accordance with division (A) of this section and any dog that is sold to any nonprofit teaching or research institution or organization shall be discharged from the pound or animal shelter without registration and may be kept by the agency or by the institution or organization without registration so long as the dog is being trained, or is being used for teaching and research purposes.
Any institution or organization certified by the Ohio public health council that obtains dogs for teaching and research purposes pursuant to this section shall, at all reasonable times, make the dogs available for inspection by agents of the Ohio humane society, appointed pursuant to section 1717.04 of the Revised Code, and agents of county humane societies, appointed pursuant to section 1717.06 of the Revised Code, in order that the agents may prevent the perpetration of any act of cruelty, as defined in section 1717.01 of the Revised Code, to the dogs.
(C) Any dog that the dog warden or poundkeeper is unable to dispose of, in the manner provided by this section and section 955.19 of the Revised Code, may be humanely destroyed, except that no dog shall be destroyed until twenty-four hours after it has been offered to a nonprofit teaching or research institution or organization, as provided in this section, that has made a request for dogs to the dog warden or poundkeeper.
(D) An owner of a dog that is wearing a valid registration tag who presents the dog to the dog warden or poundkeeper may specify in writing that the dog shall not be offered to a nonprofit teaching or research institution or organization, as provided in this section.
(E) A record of all dogs impounded, the disposition of the same, the owner's name and address, if known, and a statement of costs assessed against the dogs shall be kept by the poundkeeper, and he shall furnish a transcript thereof to the county treasurer quarterly.
A record of all dogs received and the source that supplied them shall be kept, for a period of three years from the date of acquiring the dogs, by all institutions or organizations engaged in teaching or research concerning the prevention and treatment of diseases of human beings or animals.
(F) No person shall destroy any dog by the use of a high altitude decompression chamber or by any method other than a method that immediately and painlessly renders the dog initially unconscious and subsequently dead.
[1] See Appendix A for the procedural history of the case and a brief summary of the submitted evidence.
[2] R.C. 955.12 and 955.16 are included in their entirety in Appendix B.
[3] R.C. 1.14 states:
"The time within which an act is required by law to be done shall be computed by excluding the first and including the last day; except that, when the last day falls on Sunday or a legal holiday, the act may be done on the next succeeding day which is not Sunday or a legal holiday. When a public office in which an act, required by law, is to be performed is closed to the public for the entire day that constitutes the last day for doing the act or before its usual closing time on that day, the act may be performed on the next succeeding day that is not a Sunday or a legal holiday as defined in this section."
[4] R.C. 1.11 states:
"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice."