{¶ 6} I respectfully dissent because, in my view, the apparatus from which relator fell meets the definition of "scaffold" contained in Ohio Adm. Code 4123:1-3-10(B)(30).
 {¶ 7} On the date of the accident, relator was engaged in erecting scaffolding. Relator testified that he was standing more than six feet above ground, on the boards comprising the first level, and was reaching up in an attempt to erect a safety rail for the second level, when a gust of wind caused the apparatus to move, and this caused him to fall. (Tr. 5-7.) Regardless whether the apparatus from which relator fell was "under construction," as the Staff Hearing Officer ("SHO") put it, the employer was using that apparatus as a "scaffold" as that term is defined in the Ohio Administrative Code.
 {¶ 8} A "scaffold" is defined as "any temporary elevated platform and its supporting structure used for supporting employees, materials, or equipment."[1] In turn, a "`platform' means the temporary flat working surface used to support employees, material, and equipment."[2] The record indisputably reveals that relator fell from an apparatus that was a temporary elevated flat working surface being used to support him. It may not have been an apparatus akin to what is commonly understood as a "completed" or "finished" scaffold, but it nonetheless met the Ohio Administrative Code's definition of a "scaffold."
 {¶ 9} The Supreme Court of Ohio has repeatedly cautioned that the commission may not determine VSSR liability by "considering] theory but not reality." State ex rel. *Page 4 Dibble v. Presrite Corp., 85 Ohio St.3d 275, 279, 1999-Ohio-263,707 N.E.2d 928. In *Page 5 State ex rel. Cleveland Wrecking Co. v. Indus. Comm. (1988),35 Ohio St.3d 248, 520 N.E.2d 228, the court declined to order vacation of an order finding a VSSR when the injured worker had fallen from a crane boom upon which he had been sitting while cutting pipe as part of the demolition process. The court determined that the crane boom from which the worker fell was a "scaffold" because, regardless of the use for which it was intended, it was, on the date of the accident, being used as a temporary elevated platform used for supporting the injured worker. The court explained, "[t]he employer's decision to use the crane in a manner inconsistent with its normal use renders any evidence relating to its normal use of little value. We find that the employer's use of the crane here satisfies the definition of a `scaffold' in Ohio Adm. Code4121:1-3-10(B). The crane's boom served as a temporary platform, or flat working surface, to support the claimant while he was cutting the pipe." Id. at 250.
 {¶ 10} In State ex rel. Pre Finish Metals, Inc. v. Indus. Comm.
(1988), 39 Ohio St.3d 314, 530 N.E.2d 918, the court rejected the employer's contention that safety requirements applicable to "single ladders" did not apply to the ladder from which the injured worker fell, where the ladder he was using was the surviving top half of an extension ladder. The key definitional difference involved was that a "single ladder" is one "consisting of but one section," while an "extension ladder" is one that "consists of two or more sections." The court focused on the reality of the apparatus used, not the theory of its use, explaining, "[w]hile the ladder in question originally comprised part of an extension ladder, it consisted, on the date of injury, of just one section." Id. at 316. Accord State ex rel. Weich Roofing, Inc. v. Indus.Comm. (1990), 69 Ohio App.3d 281, 590 N.E.2d 781. *Page 6 
 {¶ 11} Here, relator's VSSR application was based upon Ohio Adm. Code4123:1-3-10(C)(1) and (11), and Ohio Adm. Code 4123:1-3-10(F)(1). Ohio Adm. Code 4123:1-3-10(C)(1) requires that "[t]he footing or anchorage for scaffolds shall be sound, rigid, and capable of carrying four times the maximum rated load without settling or displacement." Ohio Adm. Code4123:1-3-10(C)(11) requires that "[t]he poles, legs, or uprights of scaffolds shall be * * * securely and rigidly braced to prevent swaying and displacement." The record contains undisputed evidence that when he fell, relator was standing on the flat platform of one completed level, at least six feet off the ground, and was attempting to erect the safety poles for the next level, when a gust of wind displaced the platform. The scaffold from which relator fell clearly contained "footing or anchorage" and "poles, legs, or uprights," when it became "displaced." Thus, Ohio Adm. Code 4123:1-3-10(C)(1) and (11) apply to these facts.
 {¶ 12} Ohio Adm. Code 4123:1-3-10(F)(1) concerns a scaffold's "diagonal braces" and "cross braces." The employer's incident report (Stip.R. "M") reveals that the apparatus contained diagonal braces, and the VSSR Accident Investigation Report (Stip.R. "P") reveals that it contained cross braces. Thus, Ohio Adm. Code 4123:1-3-10(F)(1) applies here as well.
 {¶ 13} Because relator was injured when he fell off of an apparatus meeting the plain and unambiguous definition of a "scaffold" under Ohio Adm. Code 4123:1-3-10(B)(30), and because Ohio Adm. Code 4123:1-3-10(C)(1) and (11) and Ohio Adm. Code 4123:1-3-10(F)(1) clearly apply to the facts, it was an abuse of discretion for the commission to determine that these regulations do not apply. For this reason, I would grant a writ of mandamus ordering the commission to vacate its order and to issue a new *Page 7 
order determining whether respondent Buckner Sons Masonry, Inc., violated Ohio Adm. Code 4123:1-3-10(C)(1) and (11) and Ohio Adm. Code4123:1-3-10(F)(1).
 {¶ 14} Because the majority has determined otherwise, I respectfully dissent.
[1] Ohio Adm. Code 4123:1-3-10(B)(30).
[2] Ohio Adm. Code 4123:1-3-10(B)(27). *Page 1